United States District Court
Southern District of Texas

**ENTERED**

February 22, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELOISE BARNES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-68 |
| | § | |
| THE KANSAS CITY SOUTHERN | § | |
| RAILWAY COMPANY; cp KANSAS CITY | § | |
| SOUTHERN, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendant The Kansas City Southern Railway Company's Motion for Summary Judgment (Doc. #15) and Plaintiff's Response to Defendant The Kansas City Southern Railway Company's Motion for Summary Judgment (Doc. #26) in addition to counsels' arguments at a hearing on October 7, 2015. For the reasons below, the Court grants Defendant's Motion for Summary Judgment.

### I.   Background

On October 22, 2011, Nancy Barnes and Willie Gonzales (collectively "Decedents") were struck by a Kansas City Southern Railway Company ("KCSR") train while they were crossing the railroad tracks at night in El Campo, Texas. Doc. #15 at 13.[1] The train consisted of two locomotives and 75 loaded grain cars and weighed approximately 10,098 tons. *Id.* The speed limit for this area of track was 25 m.p.h. and the train was traveling at 22 m.p.h. prior to the incident when it was placed into emergency braking. *Id.*

Gonzales testified (before his passing)[2] that he and Barnes had just cleaned up and

---

[1] ECF page numbers used.
[2] Gonzales passed away after the accident. He originally brought the claims on behalf of himself,

showered at the city park approximately four blocks from the location and walked west across the tracks between Alamo and Hoskins-Broadway streets to a convenience store on Highway 59 in El Campo, Texas. *Id.* After leaving the convenience story they traveled back east across the tracks to go to a club to dance. *Id.* It was dark during the Decedents' second crossing of the tracks. *Id.*

At the crossing point, the railroad had the right-of-way and it was illegal for pedestrians to be walking in the area. *Id.* Additionally this area of track is a designated quiet zone in which trains are authorized to operate without sounding the train's horn for railroad crossings. *Id.* at 14. Gonzales testified that he and Barnes were aware of the train's approach before they even attempted to cross the tracks. *Id.*

Despite this area being designated a quiet zone, when engineers Gerardo Lopez and Matthew Perry observed Decedents on or close to the tracks they immediately activated the train's horn. *Id.* After Barnes and Gonzales still did not move away from the tracks, Engineer Lopez activated the emergency brake. However, the train was not able to stop in such a short distance and struck both Barnes and Gonzales.

Barnes' medical records show that she tested positive for cocaine and her blood alcohol level was .067 on the night of the accident. Doc. #15-5. Gonzales' medical records show that his blood alcohol level was .267. Doc. #15-6.

Plaintiffs allege KCSR is liable for the following reasons:

- Failed to keep a proper lookout
- Provide adequate warning to Decedents of the train's approach
- Provide adequate signal indicators to warn pedestrians of the train's approach
- Using all means within control to prevent injury after discovery peril
- Train exceeded posted speed limit

but the claims are being carried on by his estate.

In addition to the negligence claims made by Gonzales individually and Barnes' estate, Plaintiffs Eloise Barnes, A'Leisha Lachelle Barnes and Norhisha Marie Holloway brought suit for wrongful death claims and seek damages for pain and suffering.

## II.    Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

3

When the moving party has met its Rule 56 burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III. Analysis

### A. Duty to Decedents

#### *1. Legal Background*

Plaintiffs allege that the Decedents in this case, despite trespassing on the railroad tracks, were licensees of KCSR. The distinction is potentially important due to the different duties owed the two groups–licensees vs. trespassers.

In Texas, "it is well settled . . . that if the person injured was on the premises as a licensee, the duty that the proprietor or licensor owed him was not to injure him by willful, wanton or gross negligence." *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974). Additionally, the proprietor had a duty to warn the licensee of a dangerous condition if the proprietor had actual knowledge of the dangerous condition and the licensee did not. *Id.*

In contrast, a trespasser was not entitled to the warning of the unsafe condition. *Smither v. Texas Utilities Elec. Co.*, 824 S.W.2d 693, 695 (Tex. App. 1992), *writ dismissed by agreement* (May 20, 1992). The proprietor in the case of a trespasser has only the duty to refrain from

4

injuring the trespasser through willful, wanton or grossly negligent acts or omissions. *Id.*

### 2. Status and Duty Owed

Plaintiffs contend that because of the excessive use of the path crossing the railway by persons commuting around town, KCSR knew persons were often on this path. Plaintiffs argue that this knowledge legally changed Decedents status from trespassers to licensees. In support of this contention, Plaintiffs cite a Texas appeals court case from 1908, *Missouri, K. & T. R. Co. v. Williams*, 50 Tex. Civ. App. 134, 138 (1908).

While the distinction is potentially an important one, in this case, it is a distinction without a difference. The law provides that for licensees, they must be warned of a danger if a proprietor knows it exists, *and the licensees do not. See State of Tex. V. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974). Ignorance cannot be claimed for obvious danger such as a railroad crossing. Railroad tracks, like roadways, present an inherent danger. It is not KCSR's duty to be the public's keeper and warn of all dangers regardless of how obvious. So while there is the additional duty of warning of unknown, unsafe conditions for a licensee, in the present case, the distinction is not applicable.

Regardless, Plaintiffs go even further and suggest that despite the obvious danger, KCSR should have put up a fence around the railroad tracks to protect the public. Railroad companies are an integral part of the movement of goods throughout the nation.  To that end, thousands of miles of railroad track exist throughout the country. It cannot be said the railroad has a duty to put fences or other barriers around its entire track to prevent pedestrians from crossing over them. The Decedents were sufficiently warned by the tracks, the train itself, and the train's horn that the engineers engaged while approaching the Decedents.

It is telling that Plaintiffs can point to no case law and no statute that places this

5

affirmative duty of fencing or enclosing railroad tracks on the railroad companies as Plaintiffs would like to see here. Accordingly, this Court holds that as a matter of law that KCSR did not behave in a willfully wanton or grossly negligent manner, nor was a dangerous condition in existence that the Decedents needed to be warned about.

## B. Doctrine of Discovered Peril

### 1. Legal Background

Plaintiffs also allege liability under the doctrine of discovered peril. As it pertains to this doctrine and the duty it creates, the Supreme Court of Texas has said the following:

> [W]here one is discovered some distance ahead of a train, and a timely warning is given, those in charge of the train can presume that such a person' is in possession of all his faculties and that prompted by instinct of self-preservation, he will leave the track and place himself beyond the reach of danger in time to escape injury, and are not bound to stop or check the train, unless and until the circumstances make it apparent that the person is unaware of its approach, or is unable to extricate himself from the dangerous position.'

*Sisti v. Thompson*, 229 S.W.2d 610, 615 (Tex. 1950). Thus, in order to prove liability on the basis of the doctrine of discovered peril, a Texas appeals court held the following:

> In order to establish a cause of action predicated on the doctrine of discovered peril, appellant was required to prove (1) that the deceased was in a position of peril, (2) that either the engineer or the brakeman discovered his peril, (3) that the engineer or brakeman realized that the deceased, in reasonable probability, could not or would not extricate himself from his peril in time to avoid the injury, (4) that the engineer or brakeman discovered and realized such peril of deceased within such time and distance that by the use of ordinary care they could have avoided the collision, (5) that the engineer or brakeman failed to exercise ordinary care to use all means at his command to avoid injury to deceased, and (6) that such failure was a proximate cause of the deaths of [Decedents].

*Garcia v. Burlington N., Inc.*, 443 S.W.2d 425, 432 (Tex. Civ. App.–Tyler 1976, *writ ref'd n.r.e.*)

In other words, once an engineer discovers that a person will not extricate himself/herself from danger, the engineer has a duty to behave reasonably. *See id.* That is, the engineer must

behave in a non-negligent manner. *See id.*

In Texas, the requirements to establish a negligence claim are: (1) a legal duty (2) to use due care; (3) a breach of that duty; (4) proximate causation of the resulting injury; and (5) damages. *Davis v. Kroger Co.*, 2010 WL 1267223, at *6 (N.D. Tex. Mar. 31, 2010) (citing *Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)).

An example of a situation in which a train crew did have a duty to stop or slow the train was when engineers observed a person on a narrow, single track railroad bridge over a heavily flooded stream. *See Creech v. Thompson*, 297 S.W.2d 817, 820-21 (Tex. 1957). In such a case, not only has the peril been discovered, but it was obvious that the persons could not escape such a situation, and the engineers were aware in enough time to halt the train. *See id.*

### 2. KCSR Engineers' Duty

In the present case, the KCSR engineers had a duty to the Decedents once they realized the Decedents were not going to move. The question for this Court is whether the engineers used due care after discovering the Decedents would not move from the track and the duty attached.

The problem here, and the reason the engineers waited so long before engaging the emergency brake, is that the Decedents looked to be awake and fully functioning persons. As the Supreme Court stated, "[W]here one is discovered some distance ahead of a train, and a timely warning is given, those in charge of the train can presume that such a person is in possession of all his faculties and that prompted by instinct of self-preservation, he will leave the track and place himself beyond the reach of danger in time to escape injury[.]" *Sisti*, 229 S.W.2d at 615.

Plaintiffs argue that the engineers should have engaged the emergency brake much earlier. However, the engineers could not have predicted the irrational behavior exhibited by the Decedents. Further, it would be unreasonable for engineers to be forced to throw a 10,000 ton

7

train into an emergency stop every time they saw someone on the tracks, especially when the individuals appear to be awake and have every opportunity to move from the tracks. This is especially true considering the relatively low speed of the train at only 22 mph. As such it cannot be said that the engineers breached their duty to the Decedents.

### C. Exercise of Due Care

Lastly, Plaintiffs allege KCSR was negligent and therefore liable for failing to keep a proper lookout, failing to provide adequate warning to Decedents of the train's approach, failing to provide adequate signal indicators to warn pedestrians of the train's approach, and exceeding the posted speed limit. Problematic with the Complaint is that Plaintiffs fail to frame these supposed negligent behaviors as a tort cause of action. Specifically, Plaintiffs fail to describe the nature of the duty owed to Decedents in this case.

Generally speaking, the engineers exercised a duty of due care to all persons by driving the train in a safe manner. The engineers were operating below the speed limit for trains in the area, the engineers kept a lookout, and even blew the train's horn to warn the Decedents of its coming despite the area being designated a quiet area. Further, the railroad did not violate any duty to Decedents by failing to post adequate signal indicators. The train did everything it could to warn the Decedents of the oncoming train. And, as noted above, the Decedents were in fact aware of the oncoming train. It is clear no amount of warning would have changed the outcome of this tragic accident.

The Decedents were trespassers and were owed no greater duty from the Defendant than to abstain from willfully wanton or grossly negligent conduct. The evidence in this case proves that KCSR and its engineers were not negligent in their operation of the train. Any cause of action that is premised on negligent behavior must fail. It was Decedents' conduct, and their

conduct alone, that was the cause of this unfortunate accident.

### D.  Additional Plaintiffs

Plaintiffs Eloise Barnes, A'Leisha Lachelle Barnes and Norisha Marie Holloway had no involvement in the accident in question. Accordingly, KCSR had no duty to these persons. Further, any claim for wrongful death is defeated by this Court's finding of no negligent behavior on the part of KCSR or its engineers.

## IV.  Conclusion

KCSR and its engineers conducted engaged in reasonable behavior and no reasonable jury could find otherwise. For the reasons stated above Kansas City Southern Railways Company's Motion for Summary Judgment is GRANTED.

It is so ORDERED.

FEB 1 9 2016

_____
Date

_____
THE HONORABLE ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE